**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Major Jonathan E. Schillo, USMC<br>105 Thresher Ln.<br>Stafford, VA 22554<br>United States | Case No.: |
| Plaintiff | COMPLAINT FOR VACATING OF<br>UNLAWFUL AGENCY DECISION<br>UNDER THE ADMINISTRATIVE<br>PROCEDURE ACT |
| v. | |
| The Honorable Carlos Del Toro<br>In his official capacity as the<br>Secretary of the Navy<br>1000 Navy Pentagon<br>Washington, D.C. 20350-1000 | |
| Defendant | |

**COMPLAINT FOR VACATING OF UNLAWFUL AGENCY DECISION UNDER THE ADMINISTRATIVE PROCEDURE ACT**

Plaintiff, Major Jonathan E. Schillo, USMC ("Plaintiff"), is a dedicated and accomplished Marine Corps officer, who has, for the past four years, been living under the shadow of false accusations from a troubled senior subordinate advisor, Master Sergeant J.E.R. ("MSgt. J.E.R"). MSgt. J.E.R., who unfortunately has a history of alcohol struggles and related incidents and who was collaborating with Plaintiff at night on projects as part of their attendance at a conference. Later during the night in question, the senior subordinate advisor, sent texts and made phone calls to another officer and a fellow senior-enlisted service member. That officer and fellow senior-enlisted service member would later testify as to those communications being "very broken", "very fragmented, very all over the place", "very hard to follow." The officer

contacted described the interactions between himself and the caller as similar to "drunk interactions" he had experienced with others in the past. Initially, the two recipients of the texts and calls reported that they had no indications on any type of misconduct by the Plaintiff. However, based on the texts and phone conversations with MSgt. J.E.R. on the night in question, and follow-on texts and conversations, MSgt. J.E.R. began accusing Plaintiff of drunk and disorderly behavior on the night in question. The officer and senior-enlisted service member would then report these allegations to Plaintiff's command.

These allegations resulted in five charges that were first brought before an Article 32[1] Preliminary Hearing. The charge sheet made it clear that each charge stemmed almost purely from MSgt. J.E.R.'s testimony, or communications to the officer and senior-enlisted member. During the preliminary hearing two of the five were found to lack enough evidence to even pass the low probable cause standard. Plaintiff's command later withdrew all five charges, and even later admitted that they had done so because there was insufficient evidence to support a conviction. Yet, a Report of Misconduct was still issued, and Plaintiff was placed before a Board of Inquiry 938 days after the alleged incident. The Board of Inquiry, after lengthy testimony from, and questioning of MSgt. J.E.R., found him to be completely incredible. Not only that, during evidence review of the Board members, it was highlighted that, during the investigation, the battalion commander whose unit forwarded the allegations against the Plaintiff "did not find this [the Accuser's statements] credible at all." The officer and senior-enlisted member who had first reported the event to their superiors even stated that the accuser had "zero morals or ethics" and was "dishonest" and stated that they were now convinced that they had been lied to by the accuser and been party to forwarding false allegations. With the primary foundation behind the

---

[1] 10 U.S.C. § 832,

charges and allegations having been overturned due to the accuser's lack of credibility, the Board found that the charges against Plaintiff, and allegations of substandard performance, were unsubstantiated by a preponderance of the evidence.

Yet, stunningly, Plaintiff's command and the Marine Corps unprincipledly maintained the unsubstantiated stain on Plaintiff's record rather than admit that they may have made a mistake. A mistake witnesses admitted to behind closed doors during sworn testimony, but not in public via documentation The Report of Misconduct, containing allegations found to be completely unsubstantiated, has remained within Plaintiff's Official Military Personnel File. This has caused severe damage to his career, including being passed over on his first look for selection for promotion to Lieutenant Colonel, despite his stellar record of service, numerous commendations, and high-profile assignments.

When Plaintiff went to the Board for the Correction of Naval Records to fix this obvious error and injustice, the BCNR instead upheld the retention of the unsubstantiated adverse information within his files. This has forced a dedicated officer to undertake the costs of appealing this decision before this Court. He requests that this Court vacate the BCNR's decision and order the Department of the Navy to remove all of the unsubstantiated adverse information related to the false allegations against him from his files. In order to ensure complete relief, he requests that this Court remove the 2021 pass over of him for selection for promotion to Lieutenant Colonel by the Fiscal Year 2023 Promotion Board, and remove the 2022 pass over of him for selection by the Fiscal Year 2024 Promotion Board, should it occur while the wrongful adverse information remains in his file. He requests that he be granted a Special Selection Board for each year he is passed over for promotion while the information remains in his files. In addition, he requests that he be made available for the following two promotion boards, should

he not be promoted by the Special Selection Boards. He requests, should his request for continuation of active duty service be denied while the wrongful adverse information remains in his file, removal of that denial and reconsideration of his request or continuation once it has been removed. Finally, he requests that the Court award him fees and costs in accordance with the Equal Access to Justice Act.

## I.    JURISDICTION AND VENUE

1. This court has jurisdiction pursuant to 28 U.S.C. § 1331, as this is a civil action arising under the laws of the United States, namely the Administrative Procedure Act.

2.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(e)(1) and 5 U.S.C. § 703.

## II.   THE PARTIES

3. Plaintiff, Major Jonathan E. Schillo, is a Major in the United States Marine Corps.

4. Defendant the Honorable Carlos Del Toro, is being named in his official capacity as the Secretary of Navy, which oversees the United States Marine Corps.

## III.   STATEMENT OF THE FACTS

**Plaintiff joins the Marine Corps and serves honorably, both at home and overseas.**

5. From a young age the Plaintiff desired to serve his country as a United States Marine, and he was able to follow that dream after earning an appointment to the United States Naval Academy and commissioning as an Officer of Marines upon graduation.

6. He was selected for a competitive and demanding primary military occupational specialty, and post-first tour, serving as an officer in Marine reconnaissance units, an incredibly competitive and arduous occupational specialty, completed the grueling pipeline and, soon after completion, was deployed for overseas.

7. He has led Marines and Sailors through several combat deployments, served in the training of foreign partner forces, served in key intelligence roles, and led reconnaissance units in expeditionary operations across the Pacific and Middle East.

8. Over the course of his service he has earned numerous personal awards, including the Purple Heart for wounds suffered in Operation Iraqi Freedom.

9. Thanks to his stellar record of service, he was chosen to serve as the Commanding Officer, Reconnaissance Training Company, the sole unit responsible for entry-level training of all Reconnaissance Marines in the Corps.

10. He holds (2) separate Master's Degrees, is a Distinguished Graduate of the Marine Corps Command & Staff College (DEP), is a Marine Corps University Krulak Center for Innovation & Future Warfare General Robert H. Barrow Fellow (AY22), and is currently pending publication in a peer-reviewed journal.

11. He is a family man, who has been happily and faithfully married to the same woman since 2007, and they have been blessed with two wonderful daughters.

**A troubled subordinate brings charges against Plaintiff alleging drunken conduct during a conference; despite the charges repeatedly being found to be unsubstantiated and withdrawn, adverse information is still included in Plaintiff's file.**

12. This case stems from an alleged incident on June 13, 2018, involving Plaintiff and a deeply troubled subordinate, Master Sgt. J.E.R. ("MSgt. J.E.R."). Exhibit 1, Preliminary Hearing Report dated March 13th, 2019.

13. The alleged victim, MSgt. J.E.R. claimed that on June 13, 2018, he and Plaintiff attended a conference in Quantico, VA. *Id.* at 5-6.

14. He claimed that they went to a brewery afterward and then returned to hotel both were staying in, where Plaintiff joined MSgt. J.E.R. in his room to continue working on a project for the conference, with both continuing to consume alcohol. *Id.*

15. Plaintiff allegedly got drunk, exposed himself, and attempted to wrestle with MSgt. J.E.R., who repeatedly told him that he had to leave. *Id.*

16. Five charges were alleged against Plaintiff, namely:
    a. Article 120c, Intentional Indecent Exposure ;
    b. Article 128, Assault and Battery ;
    c. Article 133, Conduct Unbecoming of an Officer;
    d. Article 134, Drunk and Disorderly Conduct; and
    e. Article 134, Fraternization.

17. On February 28, 2019, an Article 32 Preliminary Hearing was held on those charges, with the primary evidence behind each being the testimony of MSgt. J.E.R. *Id.* at 6-12 (stating that, below each charge, the primary evidence was the testimony of MSgt. J.E.R.).

18. The Preliminary Hearing found no probable cause to support two of the five charges, namely the Article 120c and Article 133 charges. *Id.* at 7, 10.

19. In addition, the Preliminary Hearing found no probable cause for the uncharged offense of allegedly violating Article 86, Unauthorized Absence, for allegedly failing to appear at the conference the next day. *Id.* at 12-13.

20. The result of the Preliminary Hearing was to recommend Nonjudicial Punishment, followed by a Board of Inquiry (implicitly dependent on the charges resulting in conviction at NJP). *Id.* at 13.

21. On May 8th, 2019, Plaintiff's commanding officer notified Plaintiff of his intent to impose NJP for the Article 128 and two Article 134 charges, which Plaintiff refused, instead demanding trial Court Martial. Exhibit 2, Intent to Impose Nonjudicial Punishment dated May 8th, 2019.

22. Plaintiff's commanding officer refused to send the matter to Court Martial, as he knew the charges couldn't be substantiated, and instead ordered all the charges withdrawn on May 11th, 2019. Exhibit 3, Withdrawal of Charges dated May 11, 2019; *see also* Exhibit 4, Report of Misconduct dated November 7th, 2019 (admitting that "an objective analysis of the evidence reveals an absence of facts that would support a conviction.")

23. Instead, nearly six months later, he issued a Report of Misconduct on November 7th, 2019, for the unadjudicated, *and now withdrawn*, charges. Exhibit 4.

24. The Report of Misconduct claims that Plaintiff was relieved for cause, and that comments were made in Plaintiff's fitness reports, which was completely false and there is nothing in Plaintiff's records to reflect any of those actions. *See id.*

25. The Report of Misconduct contained false statement of facts, which were then endorsed by subsequent officers who did not ensure the validity of the report. *See id.*

26. What was particular egregious is that Plaintiff's commanding officer resurrected the Article 120c and Article 133 charges, despite the fact that the Article 32 preliminary hearing *had found zero probable cause* for the charges. Exhibit 4 at 1; *compare* Exhibit 1 at 7, 10.

27. It didn't matter that the charges couldn't be sustained, rather than admit error, Plaintiff's command was instead hell bent on finding some way to make something stick to maintain face. *See* Exhibit 4; *compare* Exhibit 3.

28. Plaintiff's commanding officer recommended that Plaintiff be put before a Board of Inquiry to determine whether he should be separated from the Marine Corps. Exhibit 4 at 2-3.

29. The probable cause standard is substantially lower than the preponderance of the evidence standard, meaning that charges were still being attached to Plaintiff which had been

previously found to not even rise above "bare suspicion." *See* Exhibit 4 at 1; *compare* Exhibit 1 at 7, 10.

30. The reviewing chain of officers inexplicably permitted those charges to be included, on the grounds that Plaintiff was conflating the "probable cause" with the "beyond-a-reasonable-doubt" and "preponderance of the evidence" standards. Exhibit 5, First Endorsement of C.W. Hasle dated February 11th, 2020.

31. Troublingly for a party who would likely be involved in both NJP and Court Martial proceedings, Colonel C.W. Hasle apparently believed that charges which failed the probable cause evidentiary standard could somehow still sustain the beyond a reasonable doubt standard or the preponderance of the evidence standard. *See* Exhibit 5.

32. After more than 13 months after Plaintiff was notified of the Board of Inquiry proceedings, and nearly two years after the Article 32 hearing, the charges were finally adjudicated before the Board of Inquiry on January 5th and 6th, 2021. Exhibit 6, BOI Findings dated January 6th, 2021 at 1.

33. The Board of Inquiry had two questions before it:

   a. Were the allegations against Plaintiff substantiated by a preponderance of the evidence, and, if so, which ones; and

   b. If any of the allegations were substantiated, should Plaintiff be retained within the Marine Corps. Exhibit 6 at 1.

34. The Board of Inquiry, after a lengthy proceeding, unanimously found the allegations to be completely and totally unsubstantiated. *Id.*

35. The Board of Inquiry took witness testimony and reviewed the exhibits before it, adjudicating the charges on the preponderance of the evidence standard in order to determine the veracity of the allegations. *Id.*

36. This was because the Board of Inquiry was in an unusual position as, unlike most Boards, it wasn't being provided already adjudicated charges, but rather was in the position to have to act as a fact finder first. *Id.*

37. In particular, the Board of Inquiry took the lengthy testimony of MSgt. J.E.R., which, from the start, had formed the vast bulk of the evidence in the matter, and, after a long period of questioning, confirmed what had been clear from the start: he was totally incredible. *See id.*; *see also* Exhibit 1 (admitting with each charge that the bulk of the evidence behind the charge was solely the testimony of Msgt. J.E.R.)

38. Plaintiff is in possession of the audio recording of the Board of Inquiry, including the testimony and questioning of MSgt. J.E.R., though no official transcript was made by the Department of the Navy.

39. A transcription was eventually produced in 2022 by Service Z.

40. What the testimony revealed was truly shocking.

41. First, it became clear why the Commanding Officer, School of Infantry West (SOI-W), Col K. M. Stoddard, who filed the Report of Misconduct and requested a Board of Inquiry, had stated that "an objective analysis of the evidence reveals an absence of facts that would support a conviction." Exhibit 4.

42. Evidence shown at the Board of Inquiry clearly demonstrated that the Battalion Commander, a subordinate unit commander to the SOI-W Commander and Plaintiff's direct superior at the time of the allegations, had told the investigators that he had not found MSgt. J.E.R. to be credible at all.

43. However, the SOI-W Commander still filed a Report of Misconduct against the Plaintiff's and issued a derogatory counseling in the Plaintiff's files, even when the Article 32 hearing report had made it clear that MSgt. J.E.R.'s testimony, and, by extension, his credibility, had been the key evidence behind each of the accusations against Plaintiff. *See* Exhibit 1 at 6-12.

44. In addition, the government's additional witnesses, the officer and senior-enlisted member MSgt. J.E.R. had contacted that night, and whose testimony had supported the charges, stated that MSgt. J.E.R. had "zero morals or ethics", was "dishonest" and were convinced that they had been lied to.

45. Specifically, the senior-enlisted member who MSgt. J.E.R. contacted the night in question and subsequently after, testified that after their texts and phone calls on the night in question, MSgt. J.E.R. in the day or two following the night in question eventually claimed that Plaintiff had tried to wrestle MSgt. J.E.R. while the Plaintiff's penis was exposed, which is what drove the senior-enlisted member to contact his chain-of-command and report the allegations.

46. Shockingly, MSgt. J.E.R., in both his statements to NCIS investigators and his sworn testimony at the Board of Inquiry states that the Plaintiff *never* tried to wrestle him with his penis exposed.

47. MSgt. J.E.R. himself stated that the driving factor for all the reporting, all the subsequent actions, and all the personal and professional detriment to Plaintiff, this entire tragic chain of events, *had never happened*.

48. The officer and senior-enlisted Marine even testified that such behavior was common from MSgt. J.E.R. when he was drunk, and that he had invented a similar story another time, this time insinuating that another Senior Staff NCO had suicidal ideations.

49. It was revealed during the Board of Inquiry that MSgt. J.E.R. had substantial struggles with alcohol abuse.

50. It was also revealed that a grave breach of process had occurred at the Article 32 hearing, as MSgt. J.E.R. had apparently been recommended to not appear by a military legal officer, despite both sides wanting him to testify, and his underlying testimony having been the foundation of the charges against Plaintiff.

51. In short, once this matter finally was brought to the stand, it became clear that the accusations against Plaintiff had been sustained by something less than bureaucratic inertia alone and something clearly more disturbing, by officers too embarrassed to admit they had pushed baseless charges, and who just wanted someone else to have the responsibility of cleaning up the mess that had ensued, or, worse.

52. For nearly *three years* a dedicated and decorated Marine officer had lived under the career killing shadow of allegations that his command had known were baseless.

53. It should thus be completely unsurprising that the Board of Inquiry unanimously found not only all of the formal allegations to be completely unsubstantiated, but also completely cleared the Plaintiff of all accusations of substandard leadership or discharge of duties. *See* Exhibit 6; *see also* Exhibit 7, Board of Inquiry Report dated January 12th, 2021, at 2, 4-5.

54. The Board of Inquiry unanimously recommended that the case against Plaintiff be closed. Exhibit 7 at 4.

55. Despite the fact that the allegations against Plaintiff had been found to be completely unsubstantiated by a board speaking in the name of the Secretary of the Navy, Deputy Commandant for Manpower and Reserve Affairs (DC M&RA) David Ottignon still found that the Report of Misconduct constituted adverse material and astonishingly ordered it to be included in Plaintiff's Official Military Personnel File. Exhibit 8, Decision of DC M&RA Ottignon dated April 29th, 2021.

56. To be entirely clear, this Report of Misconduct not only contained charges which had been withdrawn, but also contained two charges which had failed adjudication on the *probable cause* standard, and three charges which had failed adjudication on the preponderance standard. *See* Exhibit 4; *compare* Exhibit 1 at 7, 10; *compare* Exhibit 6 at 1.

57. In addition, the underlying concerns as to Plaintiff allegedly showing substandard performance as to leadership, discharge of duties, or deportment, had also been found to have been totally unsubstantiated. *See* Exhibit 7 at 2.

58. DC M&RA Ottignon provided no explanation as to why the unsubstantiated material, founded on completely false allegations by a deeply troubled individual, continued to speak as to Plaintiff's "mental, moral, or professional qualifications." *See* Exhibit 8.

59. In effect, what everyone knew, and even what everyone admitted, to have been drunken texts and calls had now permanently caused a wrongful and mistaken stain on Plaintiff's record.

**Plaintiff applies to the BCNR, which holds in BCNR 21-5143 that a Board who speaks with the delegated authority of the Secretary of the Navy somehow doesn't bind the officers of the Marine Corps.**

60. With the charges having been found to be completely unsubstantiated, but the adverse information still remaining in his OMPF, Plaintiff was forced to apply to the Board for the Correction of Naval Records, in Docket Number 21-5143. Exhibit 9, BCNR 21-5143.

61. He correctly noted that a Board of Inquiry had adjudicated the facts of the charges against him, including taking the testimony of the only witness to the matter, and found that the charges were not substantiated by a preponderance of the evidence. Exhibit 6 at 1.

62. The BCNR completely ignored that the Board of Inquiry had acted as a factfinder for not only Plaintiff's suitability for retention, but also for the underlying charges against Plaintiff, and instead held that the Board of Inquiry had only spoken as to Plaintiff's suitability for retention. *See* Exhibit 9 at 2; *compare* Exhibit 6 at 1.

63. On said grounds, the BCNR found that the factual findings of a Board convened to speak in the Secretary of the Navy's name did not bind the officers of the Navy. Exhibit 9 at 2.

64. In addition, the BCNR found sufficient evidence to support a determination of misconduct, despite the fact that *every single allegation of misconduct had failed either the probable cause or preponderance of the evidence standard* when actually adjudicated. Exhibit 9 at 2-3; *compare* Exhibit 6; *compare* Exhibit 1 at 7, 10; *compare* Exhibit 7, Board of Inquiry Report dated January 12th, 2021, at 2, 4-5.

65. The BCNR issued its denial on February 24th, 2022.

66. Due to this inexplicable decision, fueled by the refusal of a Military Department to simply admit that it may have made an error, a dedicated Marine has been forced to endure the expense of a federal appeal to force the department to accept the prior clearing of his good name.

67. In the process he has also suffered due the wrongful adverse information in his files by being passed over for promotion and he is now facing his second promotion board, where he may be passed over again or even denied continuation in service to a 20-year retirement based on these unsubstantiated allegations remaining in his record.

68. Should he receive a second pass over, he will face mandatory separation from the Marine Corps unless he requests, and receives a grant of his request, for a continuation of his active duty service.

## <u>ARGUMENT</u>

**Claim 1:**    **The BCNR's factually unsubstantiated refusal to remove the adverse information from Plaintiff's file was contrary to law because Department of Defense Regulation requires adverse information to be substantiated by the preponderance of the evidence standard, and the charges against Plaintiff were found unsubstantiated on the plausible cause and preponderance standards.**

69. The Administrative Procedure Act provides for judicial review of agency decisions made without observance of procedure required by law. 5 U.S.C. § 702(2)(A).

70. This includes decisions which are unsupported by law, such as when the decision contradicts regulation. *Id.*

71. Department of Defense Instruction 1320.04 ("DoDI 1320.04") Enclosure 4 ¶ 1(a) defines adverse information as:

> "[A]ny substantiated adverse finding or conclusion from an officially documented investigation or inquiry or any other credible information of an adverse nature."

72.  This sentence should be read as credible information of an adverse nature being the umbrella definition for adverse information, with substantiated findings or conclusions from investigations or inquiries being examples of credible information of an adverse nature. *See* DoDI 1320.04 Encl. 4 at ¶1(a).

73. Credible information is defined as information that has been resolved and is supported by a preponderance of the evidence. *Id.*

74. As a necessary correlation, when information has been adjudicated and found to not be supported by a preponderance of the evidence, then the information is no longer credible and thus no longer adverse. *See id.*

75. Here, of the five charges against Plaintiff contained within the Report of Misconduct, two were found to be unsupported by probable cause, and three found to be unsupported by a preponderance of the evidence. Exhibit 6 at 1; Exhibit 1 at 7, 10.

76. It goes without saying that a preliminary hearing speaks with the voice of the secretary of the military department in question.

77. An Article 32 preliminary hearing reviews the evidence on the probable cause standard, to determine whether the charges alleged should be pressed against the accused. 10 U.S.C. § 832(a)(2)(B).

78. Under military judicial precedent, probable cause is a lower standard than a preponderance of the evidence. *United States v. Leedy*, 65 M.J. 208, 213 (Ct. App. Armed Forces 2007).

79. The Article 120c and Article 133 charges against Plaintiff could not even meet *a standard lower than the preponderance of the evidence* when adjudicated before an impartial hearing officer. *See* Exhibit 1 at 7, 10.

80. This clearly renders those charges no longer credible information under DoDI 1320.04 Encl. 4 at ¶1(a).

81. In addition, Plaintiff's commanding officer withdrew all five charges, including the three with alleged probable cause, and later stated that there was insufficient evidence for even conviction at Nonjudicial Punishment. Exhibit 3; Exhibit 4 at 2 ("an objective analysis of the evidence reveals an absence of facts that would support a conviction.")

82. This is an explicit admission that the information cannot sustain the preponderance of the evidence standard, rendering it no longer credible under DoDI 1320.04 Encl. 4 ¶1(a).

83. This admission was confirmed when a Board of Inquiry, once again speaking with the explicit voice of the Secretary of the Navy, found that the charges against Plaintiff, *including the claims of substandard demonstration of leadership or discharge of duties*, were unsubstantiated by the preponderance of the evidence. Exhibit 6 at 1; Exhibit 7 at 2-3.

84. Boards of Inquiry are convened by the Secretaries of Military Departments and receive evidence and make factual findings in their name. 10 U.S.C. § 1182(a).

85. If a Board of Inquiry's factual findings find that the charges against a party are not substantiated by a preponderance of the evidence, this acts as the Secretary stating that the charges are not substantiated, rendering the information no longer credible, and thus no longer adverse, under DoDI 1320.04 Encl. 4 at ¶1(a).

86. The BCNR's attempts to claim that the Board of Inquiry only made findings as to Plaintiff's suitability for retention cannot be sustained when they are directly contradicted by the Board of Inquiry's own process, which first explicitly adjudicated the claims against Plaintiff. *See* Exhibit 9 at 2; *compare* Exhibit 6 at 1; *compare* Exhibit 7 at 2-3.

87. Of particular note is that the Board of Inquiry came to its conclusion after substantial testimony from, and questioning of, MSgt. J.E.R., the underlying witness for all of the charges against Plaintiff. *See id.*

88. Indeed, the Preliminary Hearing report openly stated that MSgt. J.E.R.'s testimony was the primary evidence behind each of the charges, and the Board found him to be completely noncredible. *See id.*; *see* Exhibit 1.

89. The Board of Inquiry spoke for the Secretary of the Navy when it made its finding, meaning that the Secretary of the Navy found that the entirety of the evidence sustaining the charges against Plaintiff was not credible. *See id.*; *see* 10 U.S.C. § 1182(a).

90. The BCNR's position was, essentially, that it does not matter if an accused party is found innocent by the Secretary of the Navy, the mere fact that, at one point, an investigation came to a mistaken conclusion, is sufficient to permanently stain their military record with defamatory allegations. *See* Exhibit 9 at 2.

91. This is blatantly contrary to DoDI 1320.04 Encl. 4 ¶ 1(a) and must be set aside as contrary to law under 5 U.S.C. § 706(2)(A).

92. DC M&RA Ottignon attempted to sustain the adverse information from the Report of Misconduct under MCO P1070.12K W Chapter 1 ¶1000(4)(c)(2)(a)(7) which states adverse material includes any matter that bears or reflects on the character, performance, professional qualifications, or fitness of an officer. Exhibit 8 (not specifically citing the paragraph but citing the regulation and pulling the language from the paragraph).

93. Plaintiff had actually not addressed the regulations in question on advice from his unit's staff judge advocate office, who had assisted him with assembling his application, because it was unwritten policy to not include reports of misconduct due to the regulations being in conflict. Exhibit 10, Email from Major Thomas Eybl dated July 14, 2021.

94. The regulations of the Military Departments implement the regulations of the Department of Defense, reflecting the way the Secretaries of the Department's report to the Secretary of Defense. *See, e.g.* Army Regulation 40-501 (2019) (Standards of Fitness) at 2 (implementing Department of Defense Instruction 6130.03, which established the physical standards of fitness for the Department of Defense and the subsidiary departments).

95. If a regulation of a subsidiary department, or, in this case, the subsidiary of a subsidiary department (as the Marine Corps reports to the Secretary of the Navy, who reports to the Secretary of Defense) conflicts with a regulation of the department to which it reports to, the superior authority of the overarching department controls the matter.

96. Thus, DoDI 1320.04 Encl. 4 ¶1(a)'s standards for adverse information, requiring substantiation via a preponderance of the evidence, control here.

97. Even if it didn't, incorporation of the Report of Misconduct into Plaintiff's OMPF still directly contradicts MCO P1070.12K, given that Plaintiff was specifically cleared by the Board of Inquiry of not only the charges against him, but also any allegations of substandard performance in the facets of either leadership or discharge of duties. Exhibit 6 at 1; Exhibit 7 at 2-3.

98. How can testimony found to be noncredible by a Board charged with making findings in the name of the Secretary of the Navy result in a matter that bears or reflect on an officer's character, performance, or fitness? *See id.*

99. The BCNR, and certain officers in the Marine Corps, were essentially militating against the idea that an investigation could ever be proven wrong, and that a soldier could ever clear their name, even after the allegations against him were found to be unsubstantiated.

100. Such a position is clearly contrary to law and must be vacated.

**Claim 2:     The BCNR's finding that the allegations against Plaintiff were unsubstantiated must be vacated as arbitrary and capricious, because the Department of the Navy was deviating from a prior position without explanation.**

101. Both the Board of Inquiry and the BCNR spoke with the voice of the Secretary of the Navy, meaning that they both reflected the positions of the Secretary. 10 U.S.C. § 1182; 10 U.S.C. § 1552.

102. It is inherently arbitrary and capricious when an agency departs from a prior finding without providing an explanation for doing so. *See Quinton v. U.S.*, 64 Fed. Cl. 118, 129 (2005).

103. The Board of Inquiry specifically found that all of the allegations against Plaintiff, both in the form of the charges against him, and the allegations of substandard leadership or performance of duties, were unsubstantiated by a preponderance of the evidence. Exhibit 6 at 1; Exhibit 7 at 2-3.

104. This represented an official finding of the Secretary of the Navy. *See* 10 U.S.C. § 1182(a).

105.    By contrast, the BCNR found that the misconduct allegations were substantiated. Exhibit 9 at 2.

106.    The BCNR deviated from a prior determination by the Secretary of the Navy without providing an explanation.

107.    The BCNR's determination was that there was sufficient evidence to support Report of Misconduct, but the Board of Inquiry explicitly and unanimously found to the contrary. Exhibit 9 at 2; *compare* Exhibit 6 at 1, Exhibit 7 at 2-3.

108.    The BCNR did not explain why it found the Report of Misconduct, based solely on an investigation, more credible than the formal adjudication of the charges, following substantial testimony and questioning of the core, indeed, the only witness against the Plaintiff.

109.    Nor could it, as an investigation, which does not permit an accused to question the witnesses or properly challenge the information against him before an impartial body, can never trump the actual adjudication of the investigation's findings before an impartial board, where the accused has the right to defend himself.

110.    There is a reason why service members and civilians are only convicted *after* trial, and why investigating officers are not judge and jury, as much as commanding officers may wish them to be.

111.    What renders the BCNR's decision particularly astounding is that two of the five charges against Plaintiff in the Report of Misconduct had not even been capable of surviving the incredibly low probable cause standard. Exhibit 1 at 7, 10; *compare* Exhibit 4.

112.    The Report of Misconduct even admitted that none of the charges had sufficient evidence to lead to conviction! *See* Exhibit 4 at 2.

113.    In short, the unexplained departure within the BCNR's decision from the previous determination by the Secretary of the Navy via his Board of Inquiry was inherently arbitrary and capricious and must be vacated. *See Quinton*, 64 Fed. Cl. at 129.

114.    This unexplained deviation also applies to the decision by the Deputy Commandant for Manpower and Reserve Affairs to maintain the adverse information within Plaintiff's Official Military Personnel File. Exhibit 8, Decision by DC M&RA Ottignon dated April 29th, 2021.

115.    The deputy commandant found that Plaintiff's commanding officer's report of misconduct reflected unfavorably upon his mental, moral, or professional qualifications. *Id.*

116.    The commandant did not explain why it did so, given that the allegations within the report, *including the allegations of substandard leadership and discharge of duties*, had been adjudicated by the Board of Inquiry, with Plaintiff being unanimously cleared of the allegations. Exhibit 8; *compare* Exhibit 6 at 1, Exhibit 7 at 2-3.

117.    The deputy commandant's actions were thus themselves also inherently arbitrary and capricious. *See Quinton*, 64 Fed. Cl. at 129.

118.    DC M&RA Ottignon's incorporation of the Report of Misconduct, and upholding the Report of Misconduct by the BCNR, must thus be vacated as arbitrary and capricious under 5 U.S.C. § 706(2)(A).

**Claim 3:    The refusal by the BCNR to remove the adverse information from Plaintiff's records must be vacated as arbitrary and capricious because injustice was clearly present within the record.**

119.    Under *Code v. McCarthy*, 959 F.3d 406, 415 (D.C. Cir. 2020) the failure by a military corrections board to correct an injustice clearly presented in the record violated the board's statutory mandate under 10 U.S.C. § 1552 and must be set aside as arbitrary and capricious.

120.    Here, Plaintiff clearly showed that he had to endure nearly three years of investigations into the allegations brought by a deeply troubled subordinate, with the end result being that the subordinate's testimony was found to be completely noncredible by the Secretary's Board of Inquiry. Exhibit 6 at 1; Exhibit 7 at 2-3.

121.    Plaintiff clearly showed that it was a deep injustice for charges, including charges *which could not meet the probable cause standard*, to permanently stain his records, given that they had been repeatedly adjudicated and found to be groundless.

122.    In what world is the permanent hamstringing of the career of a dedicated officer by allegations found to be unsubstantiated by the Secretary of the Navy not a deep injustice?

123.    Given that injustice had been clearly presented in the record, the BCNR's refusal to remove the adverse information from Plaintiff's OMPF was thus a direct violation of its statutory mandate, and arbitrary and capricious under *Code. See Code*, 959 F.3d at 415.

**Claim 4:    The refusal by the BCNR to remove the adverse information from Plaintiff's records must be vacated as unsupported by substantial evidence.**

124.    BCMR/BCNR decisions are governed by the heightened substantial evidence standard of 5 U.S.C. § 706(2)(E). *See Clinton v. Goldsmith*, 526 U.S. 529, 539 (1999) (*citing Chappell v. Wallace*, 462 U.S. 296, 303 (1983)).

125.    An agency's factual findings are to be overturned under 5 U.S.C. § 706(2)(E) when the record is so compelling as to require a finding to the contrary. *Finberg v. United States Department of Agriculture*, 6 F.4th 1332, 1338 (D.C. Cir. 2021) (citing *Orion Reserves Ltd. v. Salazar*, 553 F.3d 697, 704 (D.C. Cir. 2009).

126.    The BCNR found that the Report of Misconduct was substantiated by the evidentiary record.

127.    Here, the record clearly shows that the core evidence behind the allegations against Plaintiff, the testimony of MSgt. J.E.R., was taken by the Secretary's Board of Inquiry and, following substantial questioning by the Board, found to be completely noncredible. Exhibit 6 at 1, Exhibit 7 at 2-3.

128.    Given that the sole evidence against Plaintiff had been found to be completely incredible, and that allegations against Plaintiff had been found to be unsubstantiated (both the charges and the allegations of substandard performance), it is clear that the record is so compelling as to require a contrary finding as to the Report of Misconduct. *See id.*; *see Finberg*, 6 F.4th at 1338.

129.    Due to this, the BCNR's finding that the Report of Misconduct was supported by the evidence must be overturned as unsupported by substantial evidence. 5 U.S.C. § 706(2)(E).

130.    The factual findings of a non-contested investigation of a party cannot be allowed to trump the findings of the impartial adjudication of said investigation, no matter how much an officer may be embarrassed about being proven wrong.

**Claim 5:**      **Restoring the Plaintiff to the position he was in prior to the error and injustice inflicted upon him requires removing every single piece of derogatory information associated with the unsubstantiated accusations from his files, removing any failure for selection to Lt. Col. from his files that has occurred while the derogatory information was in his files, permitting him to compete "in zone" for promotion for the next Fiscal Year Promotion Board, the granting of Special Selection Boards for each year he was/is passed over, and, should he be denied continuation while the information is in his files, the removal of this denial and reconsideration for continuation.**

131.    The BCNR is under a legal mandate to restore the service member, as closely as possible, to the position they would have been in had the error or injustice not occurred. *See Dilley v. Alexander*, 627 F.2d 407, 411-4 (D.C. Cir. 1980).

132.    First and foremost, this requires the removal of *all* adverse and /or derogatory information which is related in any way to the unsubstantiated accusations from his files, including the IRAM 3005 counseling issued to him, the Report of Misconduct, and any other related documents.

133.    This also includes the granting of a Report of No Misconduct to Plaintiff, for Plaintiff to have in his own personal records.

134.    Second, Plaintiff, due to the unsubstantiated derogatory information in his files, has been passed over for promotion once, in 2021 by the FY2023 Lieutenant Colonel Promotion Board, and will be undergoing his second look this year, where he may be passed over again due to the wrongful information.

135.    This pass over, and potential pass over, caused by the unsubstantiated derogatory information in his files, must be cleared and Plaintiff must be rendered available for the next two Fiscal Year promotion selection boards if he receives a second pass over while this matter is still pending.

136.    In addition, 10 U.S.C.§ 628(b)(1)(A) states that a Special Selection Board is warranted when the consideration of the officer by the Promotion Selection Board involved material error of fact.

137.    Here, Plaintiff was passed over, and may again be passed over, for promotion with completely unsubstantiated adverse information in his military personnel file.

138.    By statute, he clearly warrants a Special Selection Board for the FY2023 selection board and potentially the FY2024 selection board, with any non-selection by the boards to not count as pass overs.

139.    The BCNR has the authority to grant such Special Selection Boards and has frequently done so in the past as part of the relief for material errors or injustices. *See Galvin v. Del Toro*, 2022 U.S. Dist. LEXIS 29967 at *7-8 (February 18, 2022.

140.    This pass over has also required that Plaintiff must be successfully chosen for continuation, or he will otherwise be mandatorily separated from the Marine Corps.

141.    Should Plaintiff be considered for, and denied, continuation, while the unsubstantiated adverse information remains within his files, his denial should be removed from his files, and he should be reconsidered with his corrected files, if he is still not selected for promotion to Lt. Col. after the previously outlined Special Selection Boards and additional two Fiscal Year Promotion Selection Boards have occurred

142.    To not grant all of the above would be contrary to law as a direct violation of the explicit mandate placed on the BCNR. *See Dilley*, 627 F.2d at 411-4.

**Conclusion**

WHEREFORE, the Plaintiff humbly requests that this Court issue an order:

1)      Vacating the BCNR's decision in Docket Number 21-5143 as arbitrary, capricious, contrary to law, and unsupported by substantial evidence under 5 U.S.C. § 706(2)(A) and (E);

2)      Holding that the refusal to remove the adverse information from Plaintiff's files was contrary to law under 5 U.S.C. § 706(2)(A);

3)      Holding that the BCNR and DC M&RA Ottignon's unexplained departure from the factual findings of the Board of Inquiry was inherently arbitrary and capricious;

4)      Holding that the BCNR's failure to find that the adverse information was an injustice, despite the injustice being clearly presented in the record, was a violation of its statutory mandate and arbitrary and capricious;

5)      Holding that the record was so compelling as to require a finding that the Report of Misconduct was unsupported by evidence, thus rendering the BCNR's decision unsupported by substantial evidence under 5 U.S.C. § 706(2)(E).

6)      Ordering the Department of the Navy to remove the Report of Misconduct and all associated adverse information from Plaintiff's Official Military Personnel Files, and any other files where the adverse information may be found;

7)      Ordering the Department of the Navy to remove any associated IRAM 3005 counseling issued in May of 2019, and any and all other materials pertaining to the accusations in any way, shape, or form;

8)      Removing any and all failures for selection to Lt. Col. from Plaintiff's record that have occurred since the Report of Misconduct and IRAM 3005 counseling have been in his record, so that he will compete "In Zone" on the next regularly scheduled Fiscal Year Selection Promotion Board for the rank of Lt. Col.

9)      Ordering the Department of the Navy to grant Plaintiff a Report of No Misconduct.

10)      Ordering the Department of the Navy to grant Plaintiff a Special Selection Board, once all of the specified derogatory material has been removed from Plaintiff's record, for each year that Plaintiff was passed over while the derogatory information was in his files;

11)      Ordering the Department of the Navy, should Plaintiff not be selected for continuation while the derogatory information is still in his records, to remove this non-selection from his record, and consider him for continuation, if necessary, upon a review of his record with the derogatory material removed; and

12)      Granting all such other relief as it finds necessary and proper.

Plaintiff also signals his intent to file for attorney's fees and costs under the Equal Access to Justice Act.


Dated: June 29th, 2022                 Respectfully submitted,

_/s/DavidP.Sheldon_

David P. Sheldon (DC Bar # 446039)
Law Offices of David P. Sheldon, P.L.L.C.
100 M. St. SE, Suite 600
Washington, DC 20003
Tel: 202.546.9575
Fax: 202.546.0135
_Attorney for Petitioner_

**<u>Exhibit List</u>**

**<u>1.</u>**     Preliminary Hearing Report dated March 13th, 2019.

**<u>2.</u>**     Intent to Impose Nonjudicial Punishment dated May 8th, 2019.

**<u>3.</u>**     Withdrawal of Charges dated May 11, 2019.

**<u>4.</u>**     Report of Misconduct dated November 7th, 2019 .

**<u>5.</u>**     First Endorsement of C.W. Hasle dated February 11th, 2020.

**<u>6.</u>**     Board of Inquiry Findings dated January 6th, 2021.

**<u>7.</u>**     Board of Inquiry Report dated January 12th, 2021.

**<u>8.</u>**     Decision of DC M&RA Ottignon dated April 29th, 2021.

**<u>9.</u>**     BCNR 21-5143.

**<u>10.</u>**   Email from Major Thomas Eybl dated July 14, 2021.